UNITED STATES DISTRICT COURT FOR THE DISTRICT OF UTAH
CENTRAL DIVISION

| | |
|---|---|
| CINDY W., | **MEMORANDUM DECISION AND ORDER AFFIRMING THE COMMISSIONER'S DECISION DENYING DISABILITY BENEFITS** |
| Plaintiff, | |
| v. | |
| FRANK BISIGNANO, Commissioner of the Social Security Administration, | Case No. 2:25-cv-00248 |
| Defendant. | Magistrate Judge Daphne A. Oberg |

Plaintiff Cindy W.[1] brought this action for judicial review of the denial of her application for disability insurance benefits by the Commissioner of the Social Security Administration.[2] The administrative law judge (ALJ) who addressed Ms. W.'s application determined she did not qualify as disabled.[3] Ms. W. argues the ALJ erred by failing to properly evaluate the impact of Ms. W.'s impairments on her ability to sit for six hours per day.[4] As explained below, the ALJ applied the correct legal standards in

---

[1] Pursuant to best practices in the District of Utah addressing privacy concerns in judicial opinions in certain cases, including social security cases, the plaintiff is referred to by first name and last initial only.

[2] (*See* Compl., Doc. No. 1.)

[3] (Certified Tr. of Admin. R. (Tr.) 17–27, Doc. No. 10.)

[4] (*See* Opening Br. 2, Doc. No. 11.)

evaluating Ms. W.'s claimed sitting limitations, and substantial evidence supports the ALJ's findings.  Accordingly, the Commissioner's decision is affirmed.[5]

## STANDARD OF REVIEW

Section 405(g) of Title 42 of the United States Code provides for judicial review of the Commissioner's final decision.  This court reviews the ALJ's decision to determine whether substantial evidence supports her factual findings and whether she applied the correct legal standards.[6]  "[F]ailure to apply the correct legal standard or to provide this court with a sufficient basis to determine that appropriate legal principles have been followed is grounds for reversal."[7]

An ALJ's factual findings are "conclusive if supported by substantial evidence."[8] Although the evidentiary sufficiency threshold for substantial evidence is "not high," it is "more than a mere scintilla."[9]  Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."[10]  "The possibility of drawing two inconsistent conclusions from the evidence does not prevent an

---

[5] The parties consented to proceed before a magistrate judge in accordance with 28 U.S.C. § 636(c) and Rule 73 of the Federal Rules of Civil Procedure.  (Doc. No. 5.)

[6] *See* 42 U.S.C. § 405(g); *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007).

[7] *Jensen v. Barnhart*, 436 F.3d 1163, 1165 (10th Cir. 2005) (citation omitted).

[8] *Biestek v. Berryhill*, 587 U.S. 97, 102 (2019) (internal quotation marks omitted).

[9] *Id.* at 103 (citation omitted).

[10] *Id.* (citation omitted).

administrative agency's findings from being supported by substantial evidence."[11]  And the court may not reweigh the evidence or substitute its judgment for that of the ALJ.[12]

### APPLICABLE LAW

The Social Security Act defines "disability" as the inability "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment" expected to result in death or last for at least twelve consecutive months.[13] An individual is considered disabled only if her impairments are so severe, she cannot perform her past work or "any other kind of substantial gainful work."[14]

In determining whether a claimant qualifies as disabled, the ALJ uses a five-step sequential evaluation, considering whether:

1) the claimant is engaged in substantial gainful activity;

2) she has a severe medically determinable physical or mental impairment;

3) the impairment is equivalent to an impairment precluding substantial gainful activity (listed in the appendix of the relevant disability regulation);

4) she has the residual functional capacity to perform past relevant work; and

---

[11] *Lax*, 489 F.3d at 1084 (citation omitted).

[12] *Langley v. Barnhart*, 373 F.3d 1116, 1118 (10th Cir. 2004).

[13] 42 U.S.C. § 423(d)(1)(A).

[14] *Id.* § 423(d)(2)(A).

5) she has the residual functional capacity to perform other work, considering her age, education, and work experience.[15]

In the first four steps, the claimant has the burden of establishing disability.[16]  And at step five, the Commissioner must show the claimant retains the ability to perform other work in the national economy.[17]

## PROCEDURAL HISTORY

Ms. W. applied for disability insurance benefits under Title II of the Social Security Act,[18] alleging she became disabled in July 2021.[19]  After an administrative hearing,[20] the ALJ issued a decision in November 2023, denying benefits.[21]

At step two of the sequential evaluation, the ALJ found Ms. W. had the severe impairments of "degenerative disc disease of the lumbar spine [status post] surgery, degenerative disc disease of the cervical spine [status post] surgery, obesity, and myofascial pain."[22]  She concluded Ms. W. also had nonsevere impairments of

---

[15] See 20 C.F.R. § 404.1520(a)(4); *Bowen v. Yuckert*, 482 U.S. 137, 140–42 (1987); *Williams v. Bowen*, 844 F.2d 748, 750–51 (10th Cir. 1988).

[16] *Ray v. Bowen*, 865 F.2d 222, 224 (10th Cir. 1989).

[17] *Id.*

[18] 42 U.S.C. §§ 401–434.

[19] (*See* Tr. 17, 188–90, 195–96.)

[20] (*See* Tr. 33–76.)

[21] (Tr. 17–27.)

[22] (Tr. 19.)

4

hyperthyroidism and abdominal pain.[23]  At step three, the ALJ found Ms. W.'s impairments did not meet or medically equal an impairment listing.[24]

The ALJ then determined Ms. W. had the residual functional capacity to perform "light work" but with the following restrictions:

> [S]he can lift and carry 20 pounds occasionally, 10 pounds frequently, stand and/or walk for 2 hours in an 8 hour workday, [and] sit for about 6 hours in an 8 hour workday.  The claimant can never climb ladders, ropes or scaffolds.  The claimant can occasionally climb ramps and stairs, stoop, kneel, crouch, crawl, and balance.  The claimant must avoid concentrated exposure to hazards including dangerous moving machinery and unprotected heights.[25]

At step four, based on this residual functional capacity assessment and the testimony of a vocational expert, the ALJ found Ms. W. could perform her past work as a policy holder information clerk and receptionist.[26]  The ALJ also noted the vocational expert testified that Ms. W. could still perform her past work even if her residual functional capacity were reduced to "sedentary."[27]  Accordingly, the ALJ found Ms. W. not disabled and denied her claim.[28]  This decision became final when the Appeals Council denied Ms. W.'s request for review.[29]

---

[23] (Tr. 20.)

[24] (*Id.*)

[25] (Tr. 20–21.)

[26] (Tr. 25–26.)

[27] (Tr. 26.)

[28] (Tr. 26–27.)

[29] (Tr. 1–3.)

**ANALYSIS**

Ms. W. raises a single claim of error relating to the ALJ's residual functional capacity determination.  She contends the ALJ failed to properly evaluate the impact of Ms. W.'s impairments on her ability to sit for six or more hours of an eight-hour workday.[30]

A.  Legal Standards

A claimant's residual functional capacity (RFC) reflects the most she can do in a work setting considering her limitations.[31]  In assessing RFC, the ALJ considers "the extent to which an individual's medically determinable impairment(s), including any related symptoms, such as pain, may cause physical or mental limitations or restrictions that may affect his or her capacity to do work-related physical and mental activities."[32]  The ALJ considers all relevant evidence in the record.[33]

In determining a claimant's RFC, an ALJ must evaluate a claimant's self-reported symptoms using a two-step process.  First, the ALJ "must consider whether there is an underlying medically determinable physical or mental impairment(s) that could reasonably be expected to produce an individual's symptoms, such as pain."[34]  Second,

---

[30] (Opening Br. 2, 10–11, Doc. No. 12.)

[31] *See* 20 C.F.R. § 404.1545(a)(1); SSR 96-8p, 1996 SSR LEXIS 5, at *1–2 (July 2, 1996).

[32] SSR 96-8p, 1996 SSR LEXIS 5, at *5.

[33] *See* 20 C.F.R. § 404.1545(a)(3).

[34] SSR 16-3p, 2016 SSR LEXIS 4, at *3 (Mar. 16, 2016); *see also* 20 C.F.R. § 404.1529(b).

the ALJ must "evaluate the intensity and persistence of those symptoms to determine the extent to which the symptoms limit an individual's ability to perform work-related activities."[35]  In doing so, the ALJ "examine[s] the entire case record."[36]  The ALJ considers factors such as: the claimant's daily activities; the duration, frequency, and intensity of symptoms; medication taken and whether it alleviates the symptoms; and other treatment or measures used to relieve the symptoms.[37]  The ALJ also considers any inconsistencies between the claimant's statements and the rest of the evidence, including the claimant's history, medical signs and laboratory findings, and statements by medical sources and others.[38]

In determining RFC, an ALJ must also assess the persuasiveness of medical opinions and prior administrative findings, based on the following factors: (1) supportability (the objective medical evidence and supporting explanations presented by the medical source); (2) the consistency of the opinion with evidence from other medical and nonmedical sources; (3) the relationship with the claimant (including its length, frequency, purpose, and extent—and whether it was an examining relationship); (4) any specialization; and (5) any other relevant factors.[39]  The most

---

[35] SSR 16-3p, 2016 SSR LEXIS 4, at *4; *see also* 20 C.F.R. § 404.1529(c).

[36] SSR 16-3p, 2016 SSR LEXIS 4, at *9–10; *see also* 20 C.F.R. § 404.1529(c).

[37] SSR 16-3p, 2016 SSR LEXIS 4, at *18–19; *see also* 20 C.F.R. § 404.1529(c)(3).

[38] 20 C.F.R. § 404.1529(c)(4).

[39] *Id.* § 404.1520c(b), (c)(1)–(5).

important factors are supportability and consistency—the ALJ must explain how she evaluated both factors.[40]

B.  ALJ's Findings

The ALJ summarized Ms. W.'s testimony regarding her treatment history, symptoms, and limitations as follows.  Ms. W. testified she initially stopped working in March 2021 when she had neck surgery.[41]  She briefly returned to work three months later, but she stopped working in July 2021 because she had "severe pain in the lumbar spine extending down her legs into her feet."[42]  Ms. W. then had lumbar spine surgery in October 2021.[43]  Although Ms. W. reported the surgery was helpful and reduced her pain, she testified she continued to have pain in both legs, which made walking and standing difficult.[44]  Ms. W. explained she had a spinal cord stimulator implanted for leg and back pain, which reduced her pain by half.[45]  She also took pain medications as needed, two to three times per week, which somewhat helped her symptoms.[46]  She testified she could stand twenty to twenty-five minutes before she had pain, walk twenty minutes on a level surface, sit for forty-five minutes, reach in all directions, and

---

[40] *Id.* § 404.1520c(b)(2).

[41] (*See* Tr. 21.)

[42] (*Id.*)

[43] (Tr. 21–22; *see also* Tr. 587 (surgery record).)

[44] (Tr. 21.)

[45] (*Id.*)

[46] (*Id.*)

lift/carry ten to twelve pounds.[47]

The ALJ next applied the agency's two-step analysis in evaluating Ms. W.'s self-reported symptoms and limitations.  First, the ALJ found Ms. W.'s medically determinable impairments could "reasonably be expected to cause some of the alleged symptoms."[48]  But she concluded Ms. W.'s "statements concerning the intensity, persistence and limiting effects of these symptoms [were] not entirely consistent with the medical evidence and other evidence in the record."[49]

The ALJ acknowledged the medical records "clearly establish [Ms. W.] has degenerative disc disease of the cervical and lumbar spine, per imaging, and surgery."[50] But "[t]reatment records reflect[ed] [Ms. W.] experienced improvement with both surgeries, although she continue[d] to have sciatica in both legs and neuropathic pain after the lumbar surgery."[51]  The ALJ noted Ms. W. had "significant physical therapy," which she testified was painful but "helpful overall."[52]  And in July 2023, she told her physical therapist "her pain had been more manageable" and the spinal cord stimulator improved her symptoms by half.[53]  While Ms. W. testified she spent two days per week

---

[47] (*Id.*)

[48] (Tr. 22.)

[49] (*Id.*)

[50] (Tr. 23–24.)

[51] (Tr. 24 (citing 368–70, 436, 519, 522–23, 1404–06).)

[52] (*Id.*)

[53] (*Id.* (citing Tr. 1293).)

in bed because her pain had worsened since July 2023, the ALJ found this was "not reflected in the record."[54]  The ALJ also noted Ms. W. lived alone, and she reported driving three times per week, showering and dressing independently, doing laundry, light vacuuming, sweeping and cleaning, and cooking (while sitting down).[55]

The ALJ also considered medical evidence and prior administrative medical findings.  State agency medical consultants found Ms. W. could "lift 20 pounds occasionally [and] 10 pounds frequently, stand/walk 2 hours and sit 6 hours in an 8-hour workday, never climb ladders, ropes or scaffolds, occasionally perform all other postural movements, and [must] avoid concentrated exposure to hazards."[56]  The ALJ found this "overall persuasive and consistent with the medical evidence," noting the consultants referred to "the record diagnostic imaging, history of spine surgery, objective findings of [range of motion], allegations of pain, and [Ms. W.'s] obesity" to support their findings.[57]

The ALJ also considered medical opinions from Ms. W.'s primary care physician, Dr. Watts, in March 2022 and January 2023.[58]  In March 2022, Dr. Watts opined Ms. W. could "sit/stand/walk a total of 3 hours in an 8-hour workday, occasionally lift/carry less than 10 pounds, ha[d] no hand or reaching limitations, and require[d] 15–20 minute

---

[54] (Id.)

[55] (Id.)

[56] (Id. (citing Tr. 77–83, 85–91).)

[57] (Tr. 25.)

[58] (Id. (citing Tr. 514–18, 879–84).)

breaks every 1–3 hours."[59]  While acknowledging the treatment relationship, the ALJ found Dr. Watts' opinion unpersuasive, noting it was unsupported by his examinations of Ms. W. or "the medical evidence of record."[60]  The ALJ also observed Dr. Watts did not "refer to his treatment records, objective findings or the record in support of his opinion."[61]

Likewise, the ALJ found Dr. Watts' January 2023 opinion unpersuasive.[62]  Dr. Watts opined Ms. W. could "frequently lift/carry less than 10 pounds and never more, [] bilaterally finger/handle/reach in all directions 20%, stand/walk for 1 hour and sit 3 hours total in an 8-hour workday."[63]  He also indicated she required "15–30 minute breaks every 15–60 minutes and would be absent more than four day[s] per month."[64]  The ALJ found Dr. Watts' opinion was "not supported by his treatment notes, which reflected objective exam findings within normal limits," or "the record overall."[65]  And the ALJ

---

[59] (*Id.* (citing Tr. 514–18).)

[60] (*Id.* (citing Tr. 432–33, 436–37, 439–40).)

[61] (*Id.*)

[62] (*See id.*)

[63] (*Id.* (citing Tr. 879–84).)  The January 2023 opinion included both a check-box form indicating Ms. W. could sit for three hours and a letter stating she could sit for two to four hours.  (Tr. 879–82.)

[64] (*Id.* (citing Tr. 879–84).)

[65] (*Id.* (citing Tr. 1265, 1269–70, 1274, 1278, 1285).)

noted there were "no findings to support the finger/handle/reach limitations or that [Ms. W. could] only walk a total of one hour."[66]

Ultimately, the ALJ determined Ms. W. could perform light work with certain restrictions, including standing or walking for two hours and sitting for "about 6 hours" in an eight-hour workday.[67]  The ALJ explained she "considered [Ms. W.'s] ongoing pain complaints due to her impairments," and she "accounted for this with the reduction to the light level with further reduction in standing/walking, and postural limitations."[68]

### C.  Discussion

Ms. W. argues the ALJ failed to explain her finding that Ms. W. could sit for six to eight hours of an eight-hour workday.[69]  Ms. W. challenges the ALJ's reliance on the state agency consultants' prior administrative findings, and she contends substantial evidence does not support the ALJ's finding.[70]

As an initial matter, Ms. W. mischaracterizes the ALJ's RFC determination.  The ALJ found Ms. W. could sit for "about six hours" of an eight-hour workday (not six to eight hours), and the vocational expert testified Ms. W. could perform past work based on this RFC.[71]  Ms. W. does not challenge the vocational expert's testimony or the

---

[66] (*Id.*)

[67] (Tr. 20–21.)

[68] (Tr. 24.)

[69] (Opening Br. 12, Doc. No. 11.)

[70] (*Id.* at 11–14.)

[71] (Tr. 20–21, 73–74.)

ALJ's reliance on that testimony at step four of the sequential evaluation.  Therefore, the issue is whether the ALJ erred in finding Ms. W. capable of sitting for about six hours in an eight-hour workday.

Ms. W. has demonstrated no error in the ALJ's evaluation of her sitting ability. First, the ALJ adequately explained her findings.  The ALJ acknowledged Ms. W.'s testimony that she could only sit for forty-five minutes.[72]  Then she applied the required two-step analysis for evaluating Ms. W.'s self-reported limitations and concluded, overall, they were inconsistent with other evidence.[73]  With respect to sitting limitations, the ALJ was presented with conflicting opinions: the agency consultants' medical findings indicated Ms. W. could sit for six hours in an eight-hour workday, while Dr. Watts opined Ms. W. could only sit for three hours.[74]  (Notably, even Dr. Watts' more restrictive opinion was inconsistent with Ms. W.'s testimony on this issue.)  The ALJ evaluated the persuasiveness of this medical opinion evidence under the required framework, explaining how she considered the supportability and consistency of each source's opinions.[75]  And she provided valid reasons for adopting the state agency consultants' findings while rejecting Dr. Watts' opinions.

---

[72] (Tr. 21.)

[73] (Tr. 22–25.)

[74] (Tr. 80, 88 (prior administrative medical findings); Tr. 514, 880 (Dr. Watts' opinions).)

[75] (Tr. 24–25.)

13

Specifically, the ALJ accurately noted Dr. Watts' opinions were unsupported by his examinations of Ms. W., which showed "unremarkable" findings.[76]  By contrast, as the ALJ noted, the agency consultants referenced Ms. W.'s diagnostic imaging, surgical history, objective findings regarding range of motion, allegations of pain, and Ms. W.'s obesity in support of their findings.[77]  The ALJ was not required to articulate how she considered each opined limitation; instead, she permissibly evaluated each source's opinions as a whole.[78]  Where the state agency consultants found Ms. W. could sit for six hours, and the ALJ articulated valid reasons for concluding their findings were persuasive overall, the ALJ adequately explained the basis for finding Ms. W. capable of sitting for six hours.

Ms. W. contends the ALJ's reliance on the prior administrative medical findings was misplaced because the consultants made the findings "shortly after surgical procedures with the hope they would result in greater function," but those procedures later proved to be less effective than hoped.[79]  She also notes the consultants made

---

[76] (*See* Tr. 25, 432–33, 436–37, 439–40, 1265, 1269–70, 1274, 1278, 1285.)

[77] (*Se* Tr. 24, 79, 86–87.)

[78] *See* 20 C.F.R. § 404.1520c(b)(1) ("[W]hen a medical source provides multiple medical opinion(s) or prior administrative medical finding(s), we will articulate how we considered the medical opinions or prior administrative medical findings from that medical source together in a single analysis using the factors listed in paragraphs (c)(1) through (c)(5) of this section, as appropriate.  We are not required to articulate how we considered each medical opinion or prior administrative medical finding from one medical source individually.").

[79] (Opening Br. 13, Doc. No. 11.)

their findings a year before the administrative hearing and had no opportunity to review "either the findings of the physical therapist who saw Ms. [W.] for more than forty sessions or the updated statements of [Dr.] Watts."[80]  These arguments are unavailing.

As to the first argument, the record does not support Ms. W.'s contention that the consultants based their findings on anticipated future improvement rather than Ms. W.'s existing functional abilities and limitations.  The first consultant made findings in June 2022—seven months after Ms. W.'s lumbar spine surgery, and shortly before she received the spinal cord stimulator.[81]  The consultant acknowledged Ms. W. was "currently being evaluated," and he was unsure of "the next step."[82]  But there is no indication the consultant based his findings on an assumption of future treatment or improvement.  The second consultant made findings in September 2022, three months after Ms. W. received the stimulator.[83]  The consultant noted she was "testing out a permanent nerve stimulator" but acknowledged she was "still having low back pain."[84]  The consultant made no statements regarding anticipated future improvement from the stimulator or other treatment.  On this record, there is no basis to conclude the consultants' findings reflected a hope of future improvement rather than Ms. W.'s existing abilities.

---

[80] (*Id.*)

[81] (*See* Tr. 79–81.)

[82] (Tr. 79.)

[83] (*See* Tr. 87–89.)

[84] (Tr. 87.)

As to the second argument, the ALJ adequately considered evidence from the period after the consultants' findings, including physical therapy records, Dr. Watts' treatment records, and Dr. Watts' January 2023 opinion.[85]  The ALJ noted Ms. W. "re-engaged in physical therapy" in October 2022 and reported "doing very well and that her pain was more manageable, decreased from 10/10 to 4–5/10."[86]  The ALJ also discussed visits with Dr. Watts in December 2022 and January 2023, where Ms. W. complained of persistent neck, back, and abdominal pain.[87]  But the ALJ noted that despite these complaints, "objective findings" on examination were "unremarkable."[88] And in July 2023, Ms. W. "informed her physical therapist that her pain was more manageable" and the stimulator "relieved 50% of her symptoms," though she "complained of tightness and weakness in the low back."[89]  The ALJ also considered Dr. Watts' January 2023 opinion that Ms. W. could only sit for three hours (the same sitting limitation Dr. Watts opined in March 2022, around the time of the prior administrative findings), but found this opinion unpersuasive where it was unsupported by Dr. Watts'

---

[85] Ms. W. erroneously states Dr. Watts also provided a 2024 opinion, but the records she cites are from his March 2022 and January 2023 opinions.  (*See* Opening Br. 12, Doc. No. 11 (citing Tr. 514–16 (March 2022 opinion); Tr. 879–81 (January 2023 opinion)).)  While the last page of Dr. Watts' January 2023 opinion lists the year as 2024, (Tr. 882), this appears to be a typo, as the preceding page lists the year as 2023, (Tr. 881), and the ALJ issued her decision in November 2023, (Tr. 27).

[86] (Tr. 22–23 (citing Tr. 1357).)

[87] (Tr. 23 (citing Tr. 1263, 1265–67, 1269–70).)

[88] (*Id.* (citing Tr. 1265, 1269–70, 1274, 1278, 1285).)

[89] (*Id.* (citing Tr. 1293).)

examinations.[90]  In other words, while the state agency consultants did not have the benefit of the full record, the ALJ considered and accounted for subsequent evidence in assessing Ms. W.'s RFC.

Ms. W. also contends the ALJ did not "acknowledge or discuss the final physical therapy findings which show[ed] reduced strength in the hips and gluteus muscles and reduced core stability."[91]  But as described above, the ALJ cited and discussed the exhibit containing these records throughout the RFC analysis, and specifically discussed the final therapy visit in July 2023.[92]  Thus, it is apparent the ALJ considered the physical therapy records in assessing Ms. W.'s RFC.

Finally, Ms. W. suggests other evidence in the record supports greater sitting limitations.  She points to the record from her final physical therapy session (in July 2023), which indicated Ms. W. had met her therapy goal of sitting for an hour.[93]  And she notes that during her testimony, she clarified she could sit in a recliner for forty-five minutes, but she could only sit in an office chair for twenty minutes.[94]  But the July 2023 therapy record does not, on its face, contradict the ALJ's finding that Ms. W. could sit for

---

[90] (Tr. 25.)

[91] (Opening Br. 13, Doc. No. 11 (citing Tr. 1293–1421 (physical therapy records from 6/21/2022 to 7/3/2023, labeled as hearing exhibit 12F).)

[92] (*See* Tr. 22 (citing Tr. 1404–06 (June 2022 physical therapy record)); Tr. 23 (citing Tr. 1357 (October 2022 physical therapy record) & Tr. 1293 (July 2023 physical therapy record)); Tr. 24 (citing Tr. 1293 (July 2023 physical therapy record) & Tr. 1404–06 (June 2022 physical therapy record)).)

[93] (*See* Opening Br. 11, Doc. No. 11 (citing Tr. 1296).)

[94] (*See id.* at 11–12; Tr. 57.)

six hours.  It simply noted Ms. W. met the goal of sitting for an hour and "sitting on [a] comfortable chair [was] not a problem."[95]  To the extent the goal itself suggests greater limitations, it is insufficient to show error in the ALJ's RFC determination.  The ALJ's finding regarding Ms. W.'s sitting ability was consistent with prior administrative findings, and the record contains no medical opinion supporting Ms. W.'s allegation that she could only sit for forty-five minutes in a recliner or twenty minutes in an office chair. Further, the ALJ cited Ms. W.'s activities of daily living and medical records documenting at least some pain relief in finding Ms. W. not as limited as she claimed.[96] The prior administrative medical findings and other cited evidence are more than "mere scintilla"[97] and constitute substantial evidence supporting the ALJ's findings.

Because the ALJ adequately explained her RFC determination, applied the correct legal standards, and her findings are supported by substantial evidence, Ms. W. has demonstrated no error.

---

[95] (Tr. 1296.)

[96] (*See* Tr. 23–24.)

[97] *Biestek*, 587 U.S. at 103.

## CONCLUSION

The Commissioner's decision is affirmed.

DATED this 18th day of March, 2026.

BY THE COURT:

_Daphne A. Oberg_
Daphne A. Oberg
United States Magistrate Judge